1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11      UNITED STATES OF AMERICA,                    No.  2:17-cr-00037-TLN

12                          Plaintiff,

13              v.                                    **ORDER**

14      PATRICIA ANCHONDO,

15                          Defendant.

16

17              This matter is before the Court on Defendant Patricia Anchondo's ("Defendant") Motion

18      for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A)(i).  (ECF No. 44.)  The

19      Government filed an opposition.  (ECF No. 50.)  Defendant filed a reply.  (ECF No. 52.)  For the

20      reasons set forth below, the Court DENIES Defendant's motion.

21      ///

22      ///

23      ///

24      ///

25      ///

26      ///

27      ///

28      ///

                                                    1

1      **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2           On March 16, 2017, Defendant pleaded guilty to four counts of a 16-count information:

3    bank fraud and attempted bank fraud in violation of 18 U.S.C. §§ 2, 1344(1) and (2) (Count 3);

4    aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count 12); possession of fifteen

5    or more access devices in violation of 18 U.S.C. § 1029(a)(3) (Count 15); and possession with

6    intent to distribute at least 5 grams of methamphetamine (actual) in violation of 21 U.S.C. §

7    841(a)(1) (Count 16).  (ECF No. 24.)  On July 27, 2017, the Court sentenced Defendant to a 101-

8    month term of imprisonment to be followed by 60 months of supervised release.  (ECF No. 35.)

9    Defendant is currently serving her sentence at FCI Dublin.  She has served approximately 48

10   months of her 101-month sentence of imprisonment, and her projected release date is March 14,

11   2024.

12          On October 26, 2020, Defendant filed the instant motion for release pursuant to 18 U.S.C.

13   § 3582(c)(1)(A)(i).  (ECF No. 44.)  Defendant requests the Court reduce her term of

14   imprisonment to time served with a period of home confinement due to the COVID-19 pandemic.

15   (*Id.* at 2.)  Defendant is 41 years old and claims she is at an elevated risk for severe complications

16   from COVID-19 because she suffers from moderate to severe asthma.  (*Id.* at 4–5.)  Defendant

17   cites the conditions of her confinement at FCI Dublin as an additional factor in her vulnerability.

18   (*Id.* at 7.)  In opposition, while the Government admits moderate to severe asthma is a potentially

19   qualifying medical condition in light of COVID-19, it disputes the severity of Defendant's asthma

20   condition and argues it is well-controlled.  (ECF No. 50 at 9.)  Further, the Government argues

21   the Court should deny Defendant's motion because Defendant is a continuing danger to the

22   community and the 18 U.S.C. § 3553(a) ("§ 3553(a)") factors do not support a reduced sentence.

23       **II.      ANALYSIS**

24               A.      <u>Exhaustion</u>

25           Generally, a court "may not modify a term of imprisonment once it has been imposed."

26   18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  The

27   compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to the

28   general rule.  However, relief under 18 U.S.C. § 3582(c)(1)(A) is only available

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

In the instant case, it is undisputed that Defendant has met the threshold exhaustion requirement.  Defendant made compassionate release requests to the warden on July 30, 2020 and on August 3, 2020.  (ECF No. 44-2 at 1–2.)  The warden denied Defendant's requests on August 28, 2020.  (*Id.* at 3.)  Because more than 30 days have elapsed since her requests, Defendant has met the exhaustion requirement.  *See* 18 U.S.C. § 3582(c)(1)(A).

B.    Extraordinary and Compelling Reasons

Despite having met the exhaustion requirement, Defendant is eligible for compassionate release only if she can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's relevant policy statement on compassionate release identifies medical conditions that satisfy the "extraordinary and compelling" requirement.  U.S.S.G. § 1B1.13, cmt. n. 1(A).  More specifically, the "extraordinary and compelling" requirement is met where a defendant is: (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.*

BOP medical records — filed under seal — indicate Defendant is currently being treated for asthma.  Defendant argues there are "extraordinary and compelling reasons" warranting a sentence reduction because asthma is a high-risk factor for COVID-19 complications.  (ECF No. 44 at 4.)  The Centers for Disease Control and Prevention has identified moderate to severe asthma as a factor which "might" place an individual at an increased risk for COVID-19 complications.  *See* Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), People

3

1  Who Are at Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

2  precautions/people-with-medical-conditions.html (last visited December 1, 2020).  However, it

3  appears Defendant can adequately manage her asthma and minimize her risk of contracting

4  COVID-19 through self-care.  The Government correctly points out that Defendant's medical

5  records indicate that her asthma is "well-controlled" with inhalers.  (ECF No. 50 at 3.)  Further,

6  Defendant has no other underlying medical conditions, and at age 41, she is not in the high-risk

7  age group for COVID-19.  It also bears mentioning that as of the date of this Order, the BOP

8  reports zero active inmate cases of COVID-19 at FCI Dublin.  As such, Defendant's concerns are

9  arguably too speculative at this time.  *See United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090

10  (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the

11  criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the

12  Sentencing Commission's policy statement.").

13      For these reasons, the Court concludes Defendant is neither terminally ill nor subject to a

14  serious or unrecoverable condition that substantially diminishes her ability to provide self-care

15  within a BOP facility.  *See* U.S.S.G. § 1B1.13, cmt. n. 1(A).  Therefore, Defendant has not shown

16  there are extraordinary and compelling reasons for her release.

17              C.    Continuing Danger

18      To be eligible for compassionate release, Defendant must demonstrate that she is "not a

19  danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).  Here,

20  Defendant's crimes of conviction involved stealing identity information and financial documents

21  to open credit card accounts, take over the victims' existing bank accounts, and pose as the

22  victims to conduct transactions to obtain cash, goods, and services.  Hundreds of victims were

23  affected by her actions.

24      Importantly, the presentence report ("PSR") indicates this was not an isolated event.

25  Defendant has a long criminal history which includes multiple, separate incidents involving

26  possession of controlled substances, theft, and financial fraud activity.  Defendant also has a

27  history of violating probation.  Further, her prison disciplinary history includes an incident on

28  June 17, 2018 where Defendant was discovered to be fighting with another inmate, and an

4

1   incident on July 20, 2018, where Defendant was sanctioned for refusing a drug/alcohol test.

2   (ECF No. 50-1 at 12.)  Defendant summarily argues she is no longer a danger to anyone, citing

3   her drug rehabilitation efforts and the successful completion of various courses and certifications

4   while in prison.  (ECF No. 44 at 7–8.)  Defendant also points to strong family support and a

5   release plan that will help her reintegrate into society in a safe and responsible manner.  (*Id.*)

6   While the Court commends Defendant's efforts to rehabilitate herself while in prison and

7   recognizes the value of a release plan, those efforts do not persuade the Court that Defendant no

8   longer poses a danger to the community.  Based on Defendant's long past criminal history,

9   history of violating probation, and disciplinary history, Defendant fails to demonstrate she is not a

10  continuing danger to the community.

11              D.      Section 3553(a) Factors

12          In addition, the Court must consider the § 3553(a) factors before granting compassionate

13  release.  *See* 18 U.S.C. § 3582(c)(1)(A).  Notably, the probation officer indicated in the PSR that

14  given the nature and circumstances of Defendant's offenses, as well as her long and significant

15  criminal history, a high-end sentence was seriously considered.  However, the probation officer

16  recommended a low-end sentence based on mitigating factors, such as Defendant's difficult

17  personal history.

18          The Court ultimately followed the probation officer's recommendation and sentenced

19  Defendant to a 101-month term of imprisonment, which was the low end of the applicable

20  guidelines range of 101–120 months.  Defendant now seeks to reduce her sentence to time served

21  despite having served only approximately 48 months of her sentence.  In other words, Defendant

22  is seeking a reduction from a well-supported, low-end, 101-month sentence to a considerably

23  lower 48-month sentence.  Based on the record before the Court, the § 3553(a) factors do not

24  support such a drastic reduction.  Although the § 3553(a) factors specifically include the need to

25  provide Defendant with medical care in the most effective manner, it appears FCI Dublin has thus

26  far been capable of adequately addressing Defendant's medical needs.  Therefore, Defendant's

27  medical needs do not outweigh the other § 3553(a) factors that support a 101-month sentence.

28  ///

III.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for

Compassionate Release.  (ECF No. 44).

IT IS SO ORDERED.

DATED:  December 3, 2020


                                        Troy L. Nunley
                                        United States District Judge

6